Louis A. Ferreira, OSB No. 902602
louis.ferreira@stoel.com
Timothy W. Snider, OSB No. 034577
timothy.snider@stoel.com
Reed W. Morgan, OSB No. 140664
reed.morgan@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

      Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DULCICH, INC., an Oregon corporation, dba THE PACIFIC SEAFOOD GROUP,<br><br>    Plaintiff,<br><br>    v.<br><br>WELLS FARGO INSURANCE SERVICES USA, INC., a North Carolina corporation, n/k/a USI INSURANCE SERVICES NATIONAL, INC., a North Carolina corporation<br><br>    Defendant. | Case No.: 3:18-cv-1089<br><br>**COMPLAINT**<br><br>**(Negligence, Negligent Misrepresentation, and Breach of Contract)**<br><br>**DEMAND FOR JURY TRIAL** |

For its Complaint against Defendant Wells Fargo Insurance Services USA, Inc., now known as USI Insurance Services National, Inc. ("Defendant" or "Wells Fargo"), Plaintiff Dulcich, Inc. dba The Pacific Seafood Group ("Plaintiff" or "Pacific Seafood") alleges as follows:

Page 1 -   COMPLAINT

## PARTIES

1. Plaintiff is an Oregon corporation with a principal place of business in Clackamas, Oregon. Plaintiff owns a number of entities that are collectively known and do business as "Pacific Seafood Group." Pacific Seafood owns, leases and operates seafood processing facilities, landing stations, fishing vessels, warehouses and distribution infrastructure, and other business locations throughout the United States.

2. At all times relevant hereto, Wells Fargo was a North Carolina corporation with its principal place of business in New York.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000. 28 U.S.C. § 1332.

4. This Court is a proper venue for this case because Defendant has offices in this district, provided services to Plaintiff in this district, Plaintiff is a citizen of the State of Oregon and has its principal place of business in this district, and the loss suffered by Plaintiff occurred in this district. 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

*The relationship between Pacific Seafood and Wells Fargo*

5. On or about April 30, 2008, Pacific Seafood retained Wells Fargo as its exclusive insurance broker. Wells Fargo agreed to assess Pacific Seafood's potential insurance risk; recommend specific types of insurance products to mitigate that risk; assist Pacific Seafood in applying for insurance; recommend appropriate limits of insurance coverage; and manage negotiation and procurement of insurance policies on Pacific Seafood's behalf. In addition, Wells Fargo undertook to review the insurance policies it negotiated in order to confirm their

compliance with Pacific Seafood's needs, and agreed to assist Pacific Seafood with any claims under the insurance policies procured on Pacific Seafood's behalf.

6.  Wells Fargo had broad discretion to act on Pacific Seafood's behalf.

7.  Pacific Seafood placed special trust and confidence in Wells Fargo's claimed expertise and reasonably relied on Wells Fargo for all of its insurance-related needs, including authorizing Wells Fargo to negotiate with insurance companies and wholesalers directly on Pacific Seafood's behalf with respect to the procurement of insurance policies.

8.  Beginning in 2008 and each year thereafter, Wells Fargo recommended an insurance program for Pacific Seafood.

9.  As part of its annual review process, each year Wells Fargo requested that Pacific Seafood complete a Statement of Values for properties owned or leased by Pacific Seafood, including the real property, personal property, equipment, inventory and business income associated with each location.  Wells Fargo provided incorrect guidance to Pacific Seafood regarding the purpose of the Statement of Values and provided no guidance on how to properly complete the Statement of Values.  Wells Fargo performed few, if any, site visits, did not obtain any replacement cost estimates or appraisals or recommend that any be obtained, or provide any direction or due diligence on completion of the Statement of Values.  Wells Fargo also did not advise Pacific Seafood about insurance options for protecting against business interruption losses that might result in the event of a covered loss, or advise Pacific Seafood about how to estimate such business income losses for purposes of the Statement of Values or selecting overall coverage limits.

10. Among other things, Pacific Seafood was not advised that the Statement of Values was supposed to reflect the current replacement cost of its properties and conservative

Page 3  -  COMPLAINT

business income losses in the event of a business interruption due to a covered loss, and Pacific Seafood did not understand that the Statement of Values could reduce the per-occurrence coverage limits provided under its insurance program. Instead, Wells Fargo advised that the Statement of Values was for underwriting purposes only, and would not otherwise limit per-occurrence coverage limits. As a result, in preparing the Statement of Values each year, Pacific Seafood did not attempt to determine the current replacement cost for its properties and instead used modified book values on the Statement of Values. Likewise, Pacific Seafood provided very rudimentary estimates of business income loss. Pacific Seafood noted "for underwriting purposes only" on Statement of Values provided to Wells Fargo in connection with its insurance policy renewals to confirm with Wells Fargo that values listed on the Statement of Values were for underwriting only, and advised Wells Fargo that the figures provided were not to be used to limit coverage.

11.     In placing insurance for Pacific Seafood, Wells Fargo assured Pacific Seafood that it had adequate insurance of at least $25,000,000 in the event of an insured loss at any one of its locations.

12.     That was not the case. Unbeknownst to Pacific Seafood, its insurers concluded that the Statement of Values amounts appeared too low and advised Wells Fargo that the insurers were going to incorporate coinsurance and/or margin clauses into the policies to limit coverage to a percentage of the amounts set forth in the Statement of Values for each of the individual locations listed. The insurers advised Wells Fargo that they would waive the coinsurance/margin clause for 90 days in order to give Pacific Seafood an opportunity to modify or explain the low amounts shown on the Statement of Values.

13. Wells Fargo, however, never communicated this information to Pacific Seafood. Wells Fargo never advised that the Statement of Values was to reflect current replacement costs for each facility and all business income loss that might be suffered in the event of a facility loss. Wells Fargo never told Pacific Seafood that the insurers thought the values shown in the Statement of Values were too low, or that the insurers requested supplemental information to support the Statement of Values. Nor did Wells Fargo ever advise Pacific Seafood that the policies they procured included coinsurance or margin clauses that limited the amount of coverage to a percentage of the amount shown on the Statement of Values.

14. To the contrary, Wells Fargo misrepresented the terms of coverage and limits to Pacific Seafood, explaining each year that Pacific Seafood had an agreed amount of $25,000,000 of insurance coverage per occurrence. But not one of the locations listed on the Statement of Values had a stated value close to the $25,000,000, so in actuality Pacific Seafood did not have $25,000,000 in coverage per occurrence that it reasonably believed Wells Fargo had procured for it.

*The 2012/13 Policies*

15. Wells Fargo served as Pacific Seafood's insurance broker in connection with its insurance program for the 2012/13 policy period. In this capacity, as in prior years, Wells Fargo agreed to assess Pacific Seafood's potential insurance risk; recommend specific insurance products to mitigate that risk; assist Pacific Seafood in applying for insurance; recommend appropriate limits of insurance coverage; and manage negotiation and procurement of insurance policies on Pacific Seafood's behalf. In addition, Wells Fargo undertook to review the actual insurance policies it negotiated in order to confirm their compliance with Pacific Seafood's needs, and agreed to assist Pacific Seafood with any claims under the insurance policies procured

Page 5   -   COMPLAINT

on Pacific Seafood's behalf. Wells Fargo had broad discretion to act on Pacific Seafood's behalf.

16. As part of the 2012/13 insurance policy procurement process, Wells Fargo requested that Pacific Seafood complete a Statement of Values for properties owned and/or leased by Pacific Seafood, including the value of the property, inventory, equipment and business income at each location. As in prior years, Wells Fargo provided no guidance to Pacific Seafood on the purpose of the Statement of Values, did not conduct any site visits or due diligence in connection with the Statement of Values, and did not obtain or recommend that Pacific Seafood obtain estimates, appraisals or other information concerning the replacement cost or business income associated with any locations.

17. In providing the 2012/13 Statement of Values, Pacific Seafood was careful to point out that it was providing those figures "for underwriting purposes only" to reflect that the itemized values on the Statement of Values were not to be used to limit or cap Pacific Seafood's recovery in the event of a loss. Wells Fargo agreed that the Statement of Values would not be used for that purpose.

18. Wells Fargo then presented and summarized insurance options based on its assessment of Pacific Seafood's potential risk and liability exposure. Wells Fargo recommended that Pacific Seafood procure a primary insurance policy issued by the Westport Insurance Corporation ("Westport"), with a $10,000,000 limit of liability, and an excess insurance policy issued by Alterra Excess & Surplus Company ("Alterra"), with a $15,000,000 limit of liability in excess of the coverage provided by the Westport policy for a total of $25,000,000 in aggregate, per occurrence insurance coverage. The Alterra policy was written to follow-form to the Westport policy. In summarizing the coverage provided by the Westport and Alterra policies,

Page 6  -  COMPLAINT

Wells Fargo represented that the policies would provide Pacific Seafood with $25,000,000 in aggregate, per occurrence coverage and that a property loss at a Pacific Seafood facility would be valued using replacement cost.

19.     Wells Fargo did not inform Pacific Seafood that the policies would contain a "margin clause," which, contrary to Pacific Seafood's expectation and understanding, limited Pacific Seafood's recovery to 110% of the itemized values listed on the Statement of Values. Wells Fargo did not advise that its insurers had inserted similar clauses in prior policy years, or that its insurers had requested further substantiation of the values in Statements of Values in order to waive or remove such clauses. Nor did Wells Fargo recommend or advise that Pacific Seafood obtain appraisals or other replacement cost estimates, or business income loss assessments, to ensure that the Statement of Values reflected the actual replacement cost and business income loss associated with the various properties listed.

20.     Based on Wells Fargo's assessment of Pacific Seafood's potential risk and its representations regarding the nature and scope of coverage and limits available under the insurance policies it presented as options to Pacific Seafood, Pacific Seafood accepted Wells Fargo's recommendations. Pacific Seafood reasonably believed that it had $25,000,000 in aggregate, per occurrence insurance coverage and such coverage was adequate based on Wells Fargo's advice and representations.

21.     Several months after Wells Fargo bound insurance coverage for Pacific Seafood for the 2012/2013 policy period, the written policies were produced and provided to Wells Fargo. Pacific Seafood did not know, and Wells Fargo did not advise, that the insurance policies issued included a margin clause endorsement that purported to limit the per occurrence coverage to 110% of the itemized values listed on the Statement of Values provided during the underwriting

Page 7   -   COMPLAINT

process. Not one location on the Statement of Values had a stated total value anywhere near the $25,000,000 of purported aggregate, per occurrence coverage.

22. If Wells Fargo had notified Pacific Seafood that its insurers believed the itemized values listed on its Statement of Values were undervalued, or that Pacific Seafood's recovery under the property insurance policies was subject to a margin clause that limited recovery to 110% of the itemized values listed on its Statement of Values, Pacific Seafood would have remedied the perceived deficiencies in its Statement of Values, demanded removal of the margin clause, and/or obtained different insurance that would have afforded it sufficient per occurrence coverage limits uncapped by the Statement of Values. Moreover, had Wells Fargo appropriately advised Pacific Seafood as to the coverage and limits necessary to insure against foreseeable losses to its facilities, Pacific Seafood would have had Wells Fargo procure insurance coverage of at least $50,000,000 in per-occurrence coverage.

*The Warrenton Fire*

23. On or about June 4, 2013, Pacific Seafood's seafood processing plant in Warrenton, Oregon was completely destroyed by fire (the "Warrenton Fire").

24. The total amount of the loss caused by the Warrenton Fire was in excess of $50,000,000.

25. Westport paid its entire policy limit of $10,000,000 in satisfaction of its obligations to Pacific Seafood under the Westport policy.

26. Alterra, however, refused to pay any amounts to Pacific Seafood, arguing that, under the margin clause, Pacific Seafood's loss was limited to 110% of the itemized amounts listed in the Statement of Values. Both Pacific Seafood and Wells Fargo were surprised by this

coverage position, as neither understood that a margin clause limited coverage for the Warrenton Fire to 110% of the itemized amounts on the Statement of Values.

27.	Pacific Seafood filed a breach of contract suit against Alterra in this Court (Case No. 3:16-cv-00305).

28.	Alterra and Pacific Seafood ultimately settled their dispute and dismissed the lawsuit.

29.	Pacific Seafood, however, remains uncompensated for approximately $27,500,000 in reasonably foreseeable losses suffered in connection with the Warrenton Fire. Such amounts would have been covered if Wells Fargo had procured insurance consistent with its representation to Pacific Seafood, and had Wells Fargo reasonably and appropriately advised Pacific Seafood concerning the values of its properties in the Statements of Values, its insurance risks in connection with its operations, and the appropriate amount of coverage and limits necessary to protect against such insurance risks.

30.	In addition, Pacific Seafood was forced to incur approximately $1,000,000 in attorneys' fees and costs in seeking recovery of insurance proceeds from Alterra. Pacific Seafood would not have incurred such expenses had Wells Fargo procured the property insurance requested by Pacific Seafood.

31.	After the Warrenton Fire, Wells Fargo assigned a new insurance broker to Pacific Seafood. Under direction of that broker, Pacific Seafood increased values on the Statement of Values by more than double, and the insurers agreed to remove any margin clause or coinsurance clause on the policies that would limit coverage to amounts set forth on the Statement of Values. In addition, Pacific Seafood has now obtained insurance coverage of $50,000,000 to ensure it has

adequate coverage for its insurance risks.  Wells Fargo's efforts in this regard, however, were too late to ensure adequate insurance coverage for the Warrenton Fire.

## FIRST CLAIM FOR RELIEF

### (Negligence)

32. Pacific Seafood realleges and incorporates by reference paragraphs 1 through 31.

33. Pacific Seafood and Wells Fargo had a special relationship.  Wells Fargo exercised broad discretion to act on Pacific Seafood's behalf, including in furtherance of Pacific Seafood's financial interests.  Pacific Seafood reasonably relied on Wells Fargo's claimed expertise and guidance in recommending and procuring adequate insurance coverage and limits to protect it against insurable risks associated with its business operations.

34. Wells Fargo had a duty to exercise reasonable care, skill, and diligence, to, among other things, (1) advise Pacific Seafood on its insurance risks and the appropriate amount of coverage and limits necessary to protect against such risks to its property and business income, (2) understand and accurately present coverage and limits options to Pacific Seafood for property and business income losses, (3) procure insurance coverage and limits for Pacific Seafood consistent with what it represented it would obtain, (4) advise Pacific Seafood on preparation of the Statement of Values and its impact on coverage and limits afforded, including the need to obtain replacement cost estimates, appraisals or other information to ensure the accuracy of the values provided, and providing basic due diligence on the Statement of Values submitted, (5) review insurance policies provided by insurers after coverage was bound to ensure the policies provided coverage and limits as represented to Pacific Seafood, and (6) advise Pacific Seafood on the margin clause inserted into its policies and the impact of such a clause on insurance coverage.

35. Wells Fargo breached each of these duties.

36. As a result of these breaches, Pacific Seafood suffered damages in an amount to be proven at trial, but no less than $28,500,000.

## SECOND CLAIM FOR RELIEF

### (Negligent Misrepresentation)

37. Pacific Seafood realleges and incorporates by reference paragraphs 1 through 36.

38. As Pacific Seafood's insurance broker, Wells Fargo owed Pacific Seafood a duty to exercise reasonable care in supplying information to Pacific Seafood.

39. Wells Fargo breached that duty by, among other things, negligently supplying false information, making a false representation of a material matter to Pacific Seafood, and failing to disclose material information during the course of its relationship with Pacific Seafood, including, without limitation, the purpose of the Statement of Values and its impact on insurance coverage limits, the coverage and limits afforded by the Westport and Alterra insurance policies, the inclusion of a margin clause in the policies that purported to limit coverage to 110% of the itemized values listed on the Statement of Values, and that Pacific Seafood had sufficient insurance coverage and limits necessary to protect against property and business income losses.

40. Pacific Seafood reasonably relied on Wells Fargo's misrepresentations and omissions in purchasing the insurance policies recommended by Wells Fargo.

41. As a result of Wells Fargo's misrepresentations and omissions, Pacific Seafood suffered damages in an amount to be proven at trial, but no less than $28,500,000.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract)

42. Pacific Seafood realleges and incorporates by reference paragraphs 1 through 41.

43.     Pacific Seafood and Wells Fargo entered into a contract, whereby Wells Fargo agreed, among other obligations, to negotiate and procure insurance coverage sufficient to insure Pacific Seafood against property damage, business income and other foreseeable losses resulting from insured losses to its business operating facilities, including, by among other things, undertaking the tasks set out in paragraph 34.

44.     Pacific Seafood performed all obligations owed Wells Fargo under the contract.

45.     Wells Fargo breached its duties under this contract by procuring insurance insufficient to protect Pacific Seafood against foreseeable losses.

46.     As a result of Wells Fargo's breach of contract, Pacific Seafood suffered damages in an amount to be proven at trial, but no less than $28,500,000.

WHEREFORE, Plaintiff prays for judgment as follows:

1.      On its First Claim for Relief, for damages in an amount to be proven at trial, but no less than $28,500,000;

2.      On its Second Claim for Relief, for damages in an amount to be proven at trial, but no less than $28,500,000;

3.      On its Third Claim for Relief, for damages in an amount to be proven at trial, but no less than $28,500,000;

4.      For pre- and post-judgment interest;

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

Page 12 -   COMPLAINT

5.      For its attorneys' fees, costs, and disbursements herein; and

6.      For such other relief as the Court deems just and equitable.

DATED: June 21, 2018.

STOEL RIVES LLP

*/s/ Timothy W. Snider*
LOUIS A. FERREIRA, OSB No. 902602
louis.ferreira@stoel.com
TIMOTHY W. SNIDER, OSB No. 034577
timothy.snider@stoel.com
REED W. MORGAN, OSB No. 140664
reed.morgan@stoel.com
Telephone: 503.224.3380

Attorneys for Plaintiff

Page 13 - COMPLAINT

96452234.3 0052902- 00012