UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DULCICH, INC., an Oregon corporation, d/b/a
Pacific Seafood Group,

        Plaintiff,

v.

USI INSURANCE SERVICES NATIONAL,
INC., a North Carolina corporation, f/k/a Wells
Fargo Insurance Services USA, Inc.,

        Defendant.

Case No. 3:18-cv-01089-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Before the court is defendant USI Insurance Services National, Inc.'s motion to compel the production of unredacted attorney's fee invoices that plaintiff Dulcich, Inc. incurred in a separate action. Defendant brought the motion informally under this court's pretrial order. *See* Minutes of Proceedings, ECF #16. This court resolved several other discovery disputes but requested additional briefing on the issue of whether plaintiff must produce unredacted attorney's fee invoices from the underlying litigation. Minutes of Proceedings, ECF #21;

Official Transcript 38, ECF #26. The court has reviewed the parties' written submissions and, for the reasons set forth below, defendant's motion is granted.[1]

I.   **Procedural History**

In 2016, plaintiff brought an action for breach of insurance contract in this district against its primary and umbrella insurers. *See Dulcich, Inc. v. Alterra Excess & Surplus Insurance Co.*, Case No. 16-cv-00305 (D. Or.) ("underlying litigation"). Plaintiff incurred approximately $1 million in attorney's fees litigating that action, which ultimately settled. *Id.*, Stipulation for Dismissal 1-2 (ECF #92) (dismissing all claims with prejudice and without attorney's fees or costs under FRCP 41(a)(1)).

Now, plaintiff seeks to recover those attorney's fees as damages in this action. Compl. ¶ 30, ECF #1. In Request No. 10, defendant seeks "[a]ll invoices for the attorney fees you allege you incurred in paragraph 30 of the complaint." Defendant's First Set of Interrogs. and Request for Production, Decl. of Reed Morgan, Ex. 9, at 8, ECF #19-9. Plaintiff objected on the grounds of work–product doctrine and attorney–client privilege,[2] but nonetheless produced redacted billing invoices that it received from its prior counsel in the underlying litigation. Pl.'s Letter at 2-3 (February 6, 2019), Decl. of Reed Morgan, Ex. 1, ECF #23-1; Pl.'s Objs. and Resps. to Def.'s First Set of Interrogs. 8, Decl. of Timothy Snider, Ex. 1, ECF #25.

---

[1] "Pretrial discovery matters are considered non-dispositive, and Magistrate Judges therefore possess authority to enter orders resolving discovery disputes." *United States v. Hansen*, 233 F.R.D. 665, 669 (S.D. Cal. 2005) (citations omitted).

[2] While the work-product doctrine and the attorney-client privilege are not the same, the parties and the caselaw consider them together for the issues addressed in this order. *See Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242, 255 (D.D.C. 2013) (analyzing the privileges separately, but finding that they are coextensive in this limited context).

Plaintiff represents that it did not redact nonprivileged information, that is, "the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed." *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (quoting *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992)). However, it redacted privileged information, that is, information that would "reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law." *Id.* (quoting *Clarke*, 974 F.2d at 129).

## II. Discussion

Because this is a diversity action, the court applies the substantive law of the forum state, Oregon. *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). In Oregon, "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. . . ." ORS 40.225(2) (alternatively known as Rule 503).

> The attorney-client privilege is one of the oldest and most widely recognized evidentiary privileges. The purpose of the privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.

*Longo v. Premo*, 355 Or. 525, 533 (2014) (internal citations, quotations, and alterations omitted). "[T]he burden of proving that the attorney-client privilege applies rests . . . with the party asserting it." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981); *see also Goldsborough v. Eagle Crest Partners, Ltd.*, 105 Or. App. 499, 503 (1991), *aff'd*, 314 Or. 336 (1992) (citing *Weil*); *Groff v. State Indus. Acc. Comm'n*, 246 Or. 557, 565 (1967) ("The burden is on him who seeks its invocation to show that both the one asserting a privilege and the nature of the testimony offered are within the ambit of the statute according the privilege.").

3 – OPINION AND ORDER

"However, the attorney-client privilege is not absolute." *Longo*, 355 Or. at 533. The Oregon Supreme Court has not addressed the exact issue presented in this case. "Where the state supreme court has not ruled on a question in issue, [the court] look[s] to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." *Home Indem.*, 43 F.3d at 1326 (citation and quotation marks omitted). "Substantial authority holds the attorney-client privilege to be impliedly waived where the client *asserts a claim* or defense that places *at issue* the nature of the privileged material." LAIRD C. KIRKPATRICK, OREGON EVIDENCE § 503.13 (6th ed. 2018) (emphasis added) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 582-83 (E.D. Wash. 1975)).

The Ninth Circuit applies a three-pronged test for determining whether there has been an implied waiver of the attorney-client privilege. *Home Indem.*, 43 F.3d at 1326 (citing *Hearn*, 68 F.R.D. at 581).

> First, the court considers whether the party is asserting the 'privilege as the result of some affirmative act, such as filing suit.' Second, the court examines whether 'through this affirmative act, the asserting party puts the privileged information at issue.' Finally, the court evaluates whether 'allowing the privilege would deny the opposing party access to information vital to its defense.'

*Amlani*, 169 F.3d at 1195.

Here, all three prongs of the test are satisfied. First, plaintiff has asserted the privilege as the result of some affirmative act, specifically, it has brought this suit against defendant.

Second, through this affirmative act, plaintiff has put the privileged information squarely "at issue" by claiming it is entitled to attorney's fees as damages. The invoices are not merely indirect evidence "related to issues raised in the litigation"—they are the primary form of direct evidence that goes to the heart of plaintiff's claim for damages. *Amlani*, 169 F.3d at 1195.

Many courts have held that bringing a damages claim for attorney's fees puts the privileged information in the billing invoices at issue.[3] And for good reason, as basic notions of fairness require this result. As the District of Columbia Circuit aptly stated:

---

[3] *E.g.*, *Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242, 255 (D.D.C. 2013) ("By filing a lawsuit seeking indemnification for attorney's fees, Feld necessarily placed the work of his attorneys directly at issue."); *id.* at 253 (collecting cases); *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002) ("Fairness requires that the work product privilege must give way to Dynasty's right to investigate the facts underlying Pamida's claim [for $750,000 in attorney's fees] and to mount a defense against that claim."); *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997) ("By claiming indemnification of attorney's fees from Ideal and offering the billing statements as evidence of the same, IFIC waived its attorney-client privilege with respect to the redacted portions of the billing statements and any other communications going to the reasonableness of the amount of the fee award."); *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 487 (2000) ("The Defendant is entitled to question whether the legal expenses were 'reasonable.' To present its defense, the United States needs to scrutinize the time devoted to each task. . . . Accordingly, the Court ordered the production of whatever time records were available to the Plaintiff or under the Plaintiff's control."); *Devault v. Isdale*, No. 6:15-CV-135-ORL-37TBS, 2016 WL 25956, at *3 (M.D. Fla. Jan. 4, 2016) ("By including hundreds of thousands of dollars of attorney's fees and costs in her damage claim, Plaintiff implicitly waived the attorney client privilege with respect to the invoices which document those fees and costs."); *Pillsbury Winthrop Shaw Pittman LLP v. Brown Sims, P.C.*, No. CIV. 4:09-MC-365, 2010 WL 56045, at *8 (S.D. Tex. Jan. 6, 2010) ("Plaintiff must produce the billing statements upon which its Clients are requesting reimbursement in relation to the [underlying litigation, and] may not redact, even partially, any entry for which reimbursement is being sought."); *Equitable Prod. Co. v. Elk Run Coal Co.*, No. 2:08-CV-00076, 2008 WL 5263735, at *5 (S.D.W. Va. Oct. 3, 2008), *objections overruled*, 2008 WL 5263737 (S.D.W. Va. Dec. 17, 2008) ("Plaintiff has conceded that it seeks to recover attorneys' and consulting fees in this matter as an element of damages and has produced the attorney and consultant invoices as support for its claims for damages. As such, Plaintiff has waived any protection under the attorney-client privilege doctrine or the work product doctrine."); *Aecon Bldgs., Inc. v. Zurich N. Am.*, No. C07-832MJP, 2008 WL 2434205, at *2 (W.D. Wash. June 13, 2008) ("It would be manifestly unfair to allow Plaintiff to seek reimbursement for the fees charged in the underlying matter and to assert that those fees were reasonable, but not allow the Zurich Defendants access to documentation of those fees."); *Am. Econ. Ins. Co. v. Schoolcraft*, No. 05-CV-01870-LTB-BNB, 2007 WL 1229308, at *5 (D. Colo. Apr. 25, 2007) ("[The insured] must produce unredacted copies of any legal bills for which [it] seeks reimbursement from [insurer]" because it "has put in issue the legal bills incurred by [the insured] in the Underlying Suit, and has thereby waived any privilege which may have existed with respect to those bills."); *Newpark Environ. Ser. v. Admiral Ins. Co.*, No. CIV.A.99-331 E, 2000 WL 136006, at *3 (E.D. La. Feb. 3, 2000) ("plaintiff has placed the communications contained within its attorney invoices at issue and thereby waived both its attorney-client privilege and work product protection.").

5 – OPINION AND ORDER

> A party asserting attorney-client privilege cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. This is particularly true where, as here, a party partially discloses the allegedly privileged information in support of its claim against another, but then asserts the privilege as a basis for withholding from its opponent the remainder of the information which is necessary to defend against the claim.

*Ideal Elec.*, 129 F.3d at 151 (internal quotations and citations omitted).

Third, allowing plaintiff to assert the privilege would deny defendant access to information that is vital to its defense. Plaintiff represents that it will rely on expert opinions to support its recovery of attorney's fees from the underlying litigation. Pl.'s Suppl. Brief 10, ECF #24. Plaintiff expects that those opinions will detail familiar lodestar calculations, compare amounts recovered against legal fees incurred, and evaluate other applicable factors for adjusting the lodestar. *Id.* However, the lodestar is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate. The District of Columbia Circuit has explained why detailed invoices are vital to evaluating the reasonableness of attorney's fees in a claim such as this:

> Appellee effectively waived its attorney-client privilege with regard to all communications going to the reasonableness of the fees claimed when it placed the purportedly privileged matters in dispute by claiming indemnification for the attorney's fees.
> . . . .
> As a practical matter, the reasonableness of any portion of the billing statement can only be determined by examining all billing statements pertaining to the legal services provided as a whole. The reasonableness of any one entry on an attorney's billing statement is likely to be informed by other charges incurred for the same general service. For example, the court needs to determine: Has the attorney over-charged for its services by expending a ridiculous amount of total time on a simple research task? Did the work undertaken encompass issues and tasks outside the scope of the question being litigated? Was each task undertaken a necessary and reasonable component of a reasonable litigation strategy?

*Ideal Elec.*, 129 F.3d at 151.

Plaintiff argues that finding an implied waiver here would conflict with Ninth Circuit and Oregon case law. Pl.'s Suppl. Brief 2, ECF #24. However, when the specific facts and issues in those cases are examined, they are easily distinguishable.

In *Home Indem.*, an insurance company gave its attorneys, Lane Powell Moss and Miller ("Lane Powell"), authority to settle a wrongful death action for policy limits. 43 F.3d at 1325. Lane Powell allegedly failed to convey the settlement offer, and the plaintiffs pursued a bad faith claim against the insurance company, which settled for $7 million. The insurance company then brought claims against Lane Powell for legal malpractice, breach of agent's duty, and contribution. *Id.*

Lane Powell sought privileged information from both the insurance company and the plaintiffs in the underlying litigation. Specifically, Lane Powell "sought access to information about the plaintiffs' and their attorneys' states of mind, motivations, and intent with respect to their settlement negotiations" in an effort to establish that the plaintiffs had set up the bad faith action. *Id.* at 1326. The Ninth Circuit applied its three-prong implicit-waiver test, and found that even if the first and second prongs were satisfied, the court was "not convinced that the information was sufficiently vital to Lane Powell's defense to fulfill the third prong of the test." *Id*. "[E]ven if there were attorney-client communications that would indicate that the plaintiffs were attempting to set up a bad faith action, they would not be relevant in light of the plaintiffs' apparent willingness to settle" for the policy limits. *Id.* at 1327.

Lane Powell also sought to discover the insurance company's "privileged communications regarding its reasons for settling" for $7 million, arguing that by seeking contribution from Lane Powell, the defendant had "thrust into issue the reasonableness of that payment[.]" *Id.* The Ninth Circuit rejected that argument as well, noting the insurance company

was not claiming that it had relied on the advice of counsel in settling the bad faith claim. Rather, the insurance company agreed to settled for $7 million because it was facing an outstanding judgment in excess of $13 million. The facts "indicate[d] that settling with the plaintiffs for $7 million was objectively reasonable. . . . There was sufficient objective evidence of the reasonableness of the settlement amount for Home to prove reasonableness to the jury without resort to its attorneys' communications." *Id.*

Thus, *Home Indem.* concerned a completely distinguishable set of circumstances than this case. Unlike *Home Indem.*, this case cannot be resolved based simply on objective facts outside of privileged information. Rather, the question in this case is whether the billing records were reasonable, and the information in the invoices is vital to resolving that issue. "It would be manifestly unfair to allow Plaintiff to seek reimbursement for the fees charged in the underlying matter and to assert that those fees were reasonable, but not allow [defendant] access to documentation of those fees." *Aecon Bldgs.*, 2008 WL 2434205, at *2.

Similarly, *Triangle Park, LLC v. Indian Harbor Ins. Co.*, No. 08-CV-1256-BR, 2010 WL 11579376 (D. Or. May 3, 2010), and *Northrup Commons Homeowners' Association v. Maryland Casualty Insurance*, Case No. 05-cv-1425 (D. Or. Apr. 24, 2006) (unpublished) are indemnification cases in which the courts found that determining the reasonableness of the underlying settlement was an objective inquiry. Neither case found that the plaintiff had put the privileged information at issue or that the defendant would be prejudiced without it because the plaintiffs relied on objective evidence, not the advice of counsel, to establish that the underlying settlement was reasonable. *See Triangle Park*, 2010 WL 11579376, at *3; *Northrup*, Case No. 05-cv-1425-ST at 7.

Finally, plaintiff's reliance on Oregon and Ninth Circuit cases awarding fees based on redacted billing invoices is similarly misplaced because those cases concern attorney's fee awards made at the court's discretion. Unlike an attorney fee award, a damages claim for attorney's fees must be determined by the factfinder. *Accord Kahn v. Pony Express Courier Corp.*, 173 Or. App. 127, 160 (2001) (finding economic damages in tort action must be objectively verifiable meaning "capable of confirmation by reference to empirical facts").

## III. Conclusion

Plaintiff has impliedly waived its privilege in the invoices from the underlying litigation. "The privilege which protects attorney-client communications may not be used both as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). Plaintiff seeks attorney's fees as damages, and defendant would be prejudiced if the privileged material is not disclosed, as it is vital to its defense.

## ORDER

Defendant's motion to compel is GRANTED. Plaintiff must produce unredacted attorney's fee billing invoices from the underlying litigation forthwith.

DATED April 5, 2019.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge